**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PAUL A. FIORAVANTI, JR.
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 30, 2026

Travis S. Hunter, Esquire
Zachary R. Greer, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

David E. Wilks, Esquire
D. Charles Vavala III, Esquire
Matthew C. Conover, Esquire
Wilks Law, LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE 19805

RE:  *Trellis Software, Inc. v. ClearList Holdings, LLC et al.*,
C.A. No. 2026-0114-PAF

Dear Counsel:

This letter decision resolves the plaintiff's motion for a preliminary injunction to enjoin arbitration[1] and the defendant's motion to compel arbitration and to dismiss or stay the current action.[2]  The court denies the plaintiff's motion and grants the defendant's motion.

## I.     FACTUAL BACKGROUND

### A.     The Parties' Contractual Relationship

On March 4, 2020, Plaintiff Trellis Software, Inc. ("Trellis" or "Plaintiff") and Defendant ClearList Holdings LLC ("ClearList" or "Defendant"), a Delaware

---

[1] Dkt. 4.

[2] Dkt. 28.

limited liability company, entered into eight agreements. Three of those agreements are pertinent to the pending motions. At a high level, the parties agreed to an equity swap and for Trellis to provide software and technology support services to ClearList under a services agreement. As a result, Trellis became a member of ClearList, and ClearList became a stockholder of Trellis. The three agreements pertinent to the present dispute are: the Operating Agreement of ClearList Holdings LLC (the "OA"), the ClearList Holdings LLC Subscription Agreement (the "Subscription Agreement"), and the Services Agreement (the "Services Agreement").[3] On September 20, 2021, the parties entered into the Amended and Restated Operating Agreement of ClearList Holdings LLC (the "AOA").[4] The AOA's terms that are pertinent to this dispute are identical to those in the OA.

### 1. The OA and AOA

The AOA is governed by Delaware law and confers exclusive jurisdiction in Delaware courts over any "proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement, or the transactions contemplated hereby."[5] The AOA integrates "any subscription

---

[3] Dkt. 1 ("Compl.") Exs. 2 (the "Subscription Agreement"), 3 (the "Services Agreement"), 4 (the "OA").

[4] Compl. Ex. 1 (the "AOA").

[5] *Id*. § 9.15(a).

agreements and relevant attachments, Profits Interest grant agreements, side letters, or similar agreements."[6]  The AOA further provides:  "The parties hereto agree that any terms contained in a side letter or similar agreement to or with a Member shall govern with respect to such member notwithstanding the provisions of this [AOA] or any subscription agreement."[7]

## 2.  The Subscription Agreement

The Subscription Agreement is governed by Delaware law.[8]  The Subscription Agreement issues units to Trellis "subject to the terms and conditions of this [Subscription] Agreement and the LLC Agreement [(the AOA)]" "in consideration for [Trellis]'s entry into that certain Services Agreement."[9]  Trellis further agreed to be bound by the AOA as part of agreeing to the terms of the Subscription Agreement.[10]  The Subscription Agreement contains an integration clause which

---

[6] *Id*. § 9.3.

[7] *Id*.

[8] Subscription Agreement § 5(c).

[9] *Id*. § 1(a).

[10] *Id*.  The Subscription Agreement refers to the OA as the "LLC Agreement."  The parties agree that the "LLC Agreement" referenced in the Subscription Agreement is the OA, and the AOA as amended.  *See generally*, Dkt. 5 ("Pl.'s Opening Br."); Dkt. 28 ("Defs.' Answering Br.").

specifies that it, along with the OA and the Services Agreement, reflect the parties'

entire agreement:

> This Agreement, the Services Agreement and the [OA] constitute the full and entire understanding and agreement of the parties hereto with respect to the subject matter hereof and thereof and supersede any and all other communications . . . between or among any of the parties hereto or with respect to the subject matter contained therein.[11]

## B.     The Services Agreement

The Services Agreement is governed by New York law[12] and provides for

"[a]ny dispute arising out of or related to [the Services] Agreement . . . and [which]

is reasonably expected to exceed Twenty-Five Thousand Dollars ($25,000)" to be

submitted to "arbitration under the rules of the American Arbitration Association

('AAA') then in effect."[13]   The Services Agreement states that it is the "entire

agreement and understanding between the parties as to the subject matter" within.[14]

The parties agree that the Services Agreement is a "side letter or similar agreement"

as contemplated by the OA and the AOA.[15]

---

[11] Subscription Agreement § 5(j).

[12] Of the eight agreements entered on March 4, 2020, the Services Agreement is the only one governed by New York law.  It appears to be based on a form Trellis services agreement.

[13] Services Agreement §§ 6.08, 6.11.

[14] *Id*. § 6.05.

[15] Dkt. 5 ("Pl.'s Opening Br.") at 27; Dkt. 28 ("Defs.' Answering Br.") at 24.

### C. Trellis's Books and Records Demand

In August 2025, Trellis began a series of informal books-and-records requests to ClearList, seeking information to value Trellis's interest in ClearList.[16] Trellis followed up with a formal books-and-records demand on January 6, 2026.[17] The requests were made pursuant to Sections 6.5(d) and 6.10(a) of the AOA, Section 3 of a promissory note between ClearList and Trellis, and 6 *Del. C.* § 18-305(a).[18] Trellis alleges that ClearList has refused to produce "nearly all of the books and records requested" in the demand.[19]

On January 8, 2026, ClearList filed a statement of claim for arbitration in New York with the American Arbitration Association (the "Arbitration Action"). ClearList alleges in the Arbitration Action that Trellis breached the Services Agreement and fraudulently induced ClearList to enter into the Subscription Agreement and the Services Agreement.[20] ClearList seeks a declaratory judgment from the arbitrator that Trellis's membership interest in ClearList is rescinded and

---

[16] Compl. ¶¶ 118–22.

[17] *Id.* ¶ 123.

[18] *Id.* ¶¶ 123, 127.

[19] *Id.* ¶¶ 128–29.

[20] Alternatively, ClearList alleged that Trellis committed an innocent misrepresentation that induced ClearList to enter into the Services Agreement and the Subscription Agreement.

Trellis's books and records demand is arbitrable (collectively, the "Arbitration Claims").[21] As an alternative to rescission, ClearList seeks damages.

On January 26, 2026, Trellis filed its verified complaint in this action. The complaint asserts claims against ClearList for a breach of the AOA and breach of the implied covenant of good faith and fair dealing. Trellis also seeks a permanent injunction enjoining the Arbitration Action, a declaratory judgment that Trellis owns 100,000 Class A shares of ClearList, and that the AOA is enforceable, along with specific performance of the AOA regarding Trellis's books and records demand.[22]

Trellis seeks a preliminary injunction prohibiting ClearList from proceeding with the Arbitration Action. Trellis argues that ClearList may not attempt to rescind the AOA and the Subscription Agreement, neither of which provides for arbitration of the claims. ClearList has countered with a motion to compel arbitration, arguing that Trellis had contractually agreed to arbitrate any claims under the Services Agreement, including the Arbitration Claims. ClearList has also moved to dismiss or stay Plaintiff's action in this court.

---

[21] Compl. Ex. 9 ¶¶ 14–17.

[22] Compl. ¶¶ 140–201. The complaint also included a claim for breach of fiduciary duty against GTS Management Partners LLC and two individual defendants. Plaintiff withdrew that claim after oral argument on the pending motions. Dkt. 49.

## II.     ANALYSIS

### A.     Motion to Compel Arbitration

"A motion to dismiss based on an arbitration clause goes to the court's subject matter jurisdiction over a dispute and is properly reviewed under Court of Chancery Rule 12(b)(1)." *Erving v. ABG Intermediate Hldgs. 2, LLC*, 2022 WL 17246320, at *2 (Del. Ch. Nov. 28, 2022). On a Rule 12(b)(1) motion, the burden is on Plaintiff to prove jurisdiction exists. *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007).

Because the Services Agreement involves interstate commerce, and the parties did not express a desire to be bound to the Delaware Uniform Arbitration Act ("DUAA"), the Federal Arbitration Act ("FAA") governs. *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80 (Del. 2006) (citing *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995)); *see Homsey Architects, Inc. v. Nine Ninety Nine, LLC*, 2010 WL 2476298, at *7 (Del. Ch. June 14, 2010) (observing that the court will find that the DUAA applies only if the agreement requires arbitration in Delaware or the parties to the agreement present a clear desire to be bound by the DUAA).

"The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The FAA

"places arbitration agreements on an equal footing with other contracts." *Id*. "If a court is 'satisfied that the making of the agreement for arbitration . . . is not in issue,' it must send the dispute to an arbitrator." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024) (quoting 9 U.S.C. § 4).

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway questions of arbitrability such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019) (quoting *Rent-A-Ctr.*, 561 U.S. at 68–69) (citation modified). The United States Supreme Court has "explained that an 'agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the . . . court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'" *Id.* at 68 (quoting *Rent-A-Ctr.*, 561 U.S. at 70).

This case presents a threshold question of whether the court or an arbitrator must decide whether the disputes presented in the Arbitration Action belong in arbitration or a court. This is frequently called the "substantive arbitrability" question.

The court must first identify the types of arguments the parties are making and determine which of those arguments are properly before the court. The court has

articulated three levels of disputes: the first level asks "whether the underlying merits dispute is arbitrable;" the second level "asks whether a court or an arbitrator decides the arbitrability question;" and the third level "asks whether the parties have agreed to have an arbitrator decide[] the arbitrability question." *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 748–49 (Del. Ch. 2023). The United States Supreme Court in *Coinbase* added a fourth-order dispute, which arises when the parties "have multiple agreements that conflict as to the third-order question of who decides arbitrability." 602 U.S. at 149. A court decides fourth-order disputes using traditional contract principles. *Id.* at 152.

The substantive arbitrability issue is typically decided by the court, "unless the parties clearly and unmistakably provide otherwise." *Willie Gary*, 906 A.2d at 79 (citation modified); *see Henry Schein*, 586 U.S. at 72; *Rent-A-Ctr.*, 561 U.S. at 63; *see also W. IP Commc'ns., Inc. v. Xactly Corp.*, 2014 WL 3032270, at *6 (Del. Super. Ct. June 25, 2014). "[T]he parties are considered to have explicitly and clearly provided for arbitrability to be an issue for the arbitrator where they have 'generally provide[d]' for arbitration of all disputes and 'incorporate[d] a set of arbitration rules' (such as the AAA rules) that provide for the arbitrator to address the issue." *Hagler v. Evolve Acq. LLC*, 2021 WL 6123549, at *4 (Del. Ch. Dec. 28, 2021) (quoting *Willie Gary*, 906 A.2d at 80). Incorporating a set of arbitration rules

that delegate questions of arbitrability to the arbitrator, like the AAA rules, creates a "heavy presumption that the parties intended to delegate substantive arbitrability." *BuzzFeed Media Enters., Inc. v. Anderson*, 2024 WL 2187054, at *5 (Del. Ch. May 15, 2024). "To maintain the presumption, an arbitration agreement does not need to delegate '*all cases*' to arbitration; it must only *generally* provide for arbitration of all disputes." *Id.* (citing *Willie Gary*, 906 A.2d at 80) (citation modified). "But, where . . . parties have agreed to *two* contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs." *Coinbase*, 602 U.S. at 152. *Coinbase* categorized the court's role as deciding which contract governs the substantive arbitrability question, not necessarily deciding substantive arbitrability.[23]

---

[23] In *Coinbase*, the Supreme Court held that the court, not an arbitrator, must decide whether an agreement containing an arbitration agreement was superseded by a later agreement that did not provide for arbitration. 602 U.S. at 152. That issue implicated the question of substantive arbitrability because the resolution of the issue directly determined whether the parties had delegated substantive arbitrability to the arbitrator. As Justice Gorsuch wrote in his concurring opinion: "Like everything else in this area, it depends on what the parties have agreed. . . . Sometimes, a court may conclude that the parties' agreements are best read as leaving for the court the task of resolving the arbitrability of the dispute at hand. But sometimes, the parties' agreements may be best read as vesting that power in an arbitrator." *Id.* at 153 (Gorsuch, J., concurring).

Plaintiff and ClearList are parties to the Services Agreement, and there is no dispute that it is a valid agreement. There is also no dispute that the Services Agreement contains an arbitration agreement that governs "any dispute arising out of or related to" the Services Agreement, with a carveout for claims not expected to exceed $25,000.[24] The arbitration agreement in the Services Agreement also requires the arbitration to be conducted under the AAA Rules, which delegates the question of substantive arbitrability to an arbitrator. Under the Delaware Supreme Court's *Willie Gary* decision, this demonstrates the parties' "clear and unmistakable intent" to submit arbitrability issues to an arbitrator." 906 A. 2d at 78, 80.

The parties agree that disputes arising under the Services Agreement are arbitrable, including the question of substantive arbitrability.[25] The parties disagree over the scope of the arbitration agreement.

Plaintiff argues that ClearList is attempting to use the arbitration agreement in the Services Agreement as "a backdoor effort to unwind the entirety of the parties' dealings and contracts in arbitration."[26] Plaintiff contends that ClearList may not

---

[24] *See* Services Agreement § 6.11.

[25] *See* Dkt. 41 ("Pl.'s Reply Br.") at 27 ("ClearList may assert, in arbitration, claims and requests for relief arising from or related to the Services Agreement, such as fraudulent inducement, breach, or rescission of the Services Agreement.").

[26] *See id*. at 5.

seek rescission of the Subscription Agreement and the AOA, which Plaintiff asserts do not contain arbitration agreements.

The AOA contains a dispute resolution provision explicitly sending all disputes to a court in Delaware. The Subscription Agreement contains no dispute resolution provision. The Subscription Agreement incorporates both the OA (now the AOA) and the Services Agreement. The court agrees that the Arbitration Claims include claims under and relying on the Subscription Agreement, but the Arbitration Claims do not mention or purport to assert claims under the AOA.

This case presents the court with another thorny issue of resolving substantive arbitrability when multiple contracts are potentially implicated. In both *Hough Assocs., Inc. v. Hill*, 2007 WL 148751 (Del. Ch. Jan. 17, 2007), and later *Kokorich v. Momentus Inc.,* 2023 WL 3454190 (Del. Ch. May 15, 2023), *aff'd*, 308 A.3d 1192 (Del. 2023) (TABLE), a party brought claims in arbitration implicating an arbitration-free agreement. In both cases, the court held that the court should decide the substantive arbitrability question. *See Hough Assocs.*, 2007 WL 148751, at *11–13; *Kokorich*, 2023 WL 3454190, at *6. Two other cases in that line, *UPM-Kymmene Corp. v. Renmatix, Inc.*, 2017 WL 4461130 (Del. Ch. Oct. 6, 2017), and *AffiniPay, LLC v. West*, 2021 WL 4262225 (Del. Ch. Sep. 17, 2021), involved arbitration agreements that directed claims to arbitration, albeit different arbitral

bodies. The court determined that this was a question for the court because it was, at base, a question of whether an agreement to arbitrate arbitrability existed. *UPM-Kymmene*, 2017 WL 4461130, at *5–7; *AffiniPay*, 2021 WL 4262225, at *6–7.

*Fairstead*, involved conflicting contracts, one with an arbitration agreement and the other with an exclusive forum provision. In that scenario, the court determined that the question of substantive arbitrability could not be delegated to an arbitrator. The court explained: "[I]f various contracts are implicated in a claim and those contracts diverge on the matter of arbitral dispute resolution, *Willie Gary*'s requirement that a provision mandate the arbitration of 'all disputes' is impossible to satisfy," thus requiring the court to determine questions of substantive arbitrability. *Fairstead*, 288 A.3d at 758. (citing *AffiniPay*, 2021 WL 4262225, at *5).

*Buzzfeed*, 2024 WL 2187054, declined to read *Fairstead* broadly, concluding that

> *Fairstead* and *Kokorich* do not shift substantive arbitrability to the Court simply because the claims [brought] under [an agreement with an arbitration agreement] are brought in the context of [other agreements lacking an arbitration agreement.] They stand for the proposition that when the arbitration petition is brought according to the terms of an arbitration provision in one agreement, with a claim expressly invoking or relying on another arbitration-free agreement, the Court addresses whether a governing arbitration agreement exists for the claim.

*Id.* at \*17. *Buzzfeed* distinguished *Fairstead* and *Kokorich* as

> cases involv[ing] an arbitration petition asserting the arbitrator's jurisdiction under one agreement with an arbitration provision, while also expressly invoking other agreements lacking an arbitration provision. . . . In that context, the *Willie Gary* test is meaningless for the agreement that does have an arbitration provision, and inapplicable for the agreement that does not. . . . *Fairstead* and *Kokorich* do not support the Court's assumption of substantive arbitrability where the claim is not expressly under an arbitration-free agreement.

*Id.*

Plaintiff argues that the Subscription Agreement is an "arbitration-free" agreement, and therefore, the court should decide substantive arbitrability, in line with *Fairstead*. Defendant disagrees, pointing to the Subscription Agreement's integration clause, which Defendant asserts integrates the Services Agreement, making the Subscription Agreement an agreement containing an arbitration agreement and satisfying the *Willie Gary* analysis.

> **1.    The Subscription Agreement includes an agreement to arbitrate.**

Unlike Plaintiff, the court does not read *Fairstead* to hold that the court must reflexively decide substantive arbitrability when an arbitration action includes claims implicating a separate agreement that does not contain an arbitration agreement on its face. Arbitration is a matter of contract. *Rent-A-Ctr.*, 561 U.S. at

67. Therefore, whether the Subscription Agreement and AOA prevent the court from finding unmistakable evidence of the parties' intent to delegate substantive arbitrability to an arbitrator is a matter of contract construction. In construing the contract, the court must construe the plain language of the Subscription Agreement, taking into account the Services Agreement and AOA. *See Fairstead*, 288 A.3d at 758–59.

"When interpreting a contract, the role of a court is to effectuate the parties' intent." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). The court "will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions." *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016). The "contract's construction should be that which would be understood by an objective, reasonable third party." *Salamone v. Gorman*, 106 A.3d 354, 367–68 (Del. 2016). (citation modified). "Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning." *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012). "If a writing is plain and clear on its face, *i.e.*, its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent." *City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993).

The analysis of whether the parties agreed to delegate substantive arbitrability of the Subscription Agreement claims largely starts and ends with the Subscription Agreement's integration clause and the carveout in the AOA.

"[A] standard integration clause in a later agreement, with no arbitration clause, does not overcome an earlier agreement that contains a valid arbitration provision." *Li v. Standard Fiber, LLC*, 2013 WL 1286202, at *7 (Del. Ch. Mar. 28, 2013); *see id.* at n.58 (collecting cases); *see also Pearson v. Valeant Pharms. Int'l, Inc.*, 2017 WL 6508358 (D.N.J. Dec. 20, 2017) ("[A]n arbitration provision in a prior agreement is superseded by a later agreement without an arbitration provision only if the subsequent agreement contains an unambiguous complete integration or merger clause."); *Jampol v. Blink Hldgs., Inc.*, 2020 WL 7774400, at *6 (S.D.N.Y. Dec. 30, 2020) (holding that a "virtually simultaneous" but subsequent agreement containing an integration clause but lacking a dispute resolution clause does not "vitiate the prior agreement to arbitrate"); *Gen. Motors Corp. v. Fiat S.p.A*, 678 F.Supp. 2d 141, 148 (S.D.N.Y. 2009) (holding that an integration clause with general language is insufficient to establish any intent of the parties to revoke retroactively a prior agreement's arbitration agreement) (citing *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 679 N.E.2d 624, 627 (N.Y. 1997)). "Where two contracts are intertwined, and only one contract contains an arbitration clause, a party may be

forced to arbitrate disputes arising under the second contract when the second contract incorporates the first contract by reference." *Korea Advanced Inst. of Sci. & Tech. v. Kip Co., Ltd.*, 2022 WL 6193347, at *8 (E.D. Wis. Oct. 7, 2022) (citing *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662, 664–66 (7th Cir. 2002)).[27]

The Subscription Agreement states that it, the Services Agreement, and the OA (and the subsequent AOA), "constitute the full and entire understanding and agreement of the parties . . . with respect to the subject matter hereof and thereof."[28] The AOA integrates the Subscription Agreement and "side letters, or similar agreements."[29] Plaintiff and Defendant agree that the Services Agreement is a "side letter, or similar agreement."[30] The AOA's integration clause provides a carveout stating:

> The parties hereto agree that any terms contained in a side letter or similar agreement to or with a Member [*i.e.*, Plaintiff] shall govern with respect to such Member *notwithstanding the provisions of this [AOA] or any subscription agreement*.[31]

---

[27] The *Korea Advanced* court examined the relationship between two contracts, conducting the Seventh Circuit's *Rosenblum* test, and found that the two writings did not show an express intent to incorporate the other. *Korea Advanced*, 2022 WL 6193347, at *8–9.

[28] Subscription Agreement § 5(j).

[29] AOA § 9.3.

[30] Pl.'s Opening Br. 27; Defs.' Answering Br. 9; Pl.'s Reply Br. 12.

[31] AOA § 9.3 (emphasis added).

The Subscription Agreement therefore points to both the AOA and the Services Agreement, creating a potential conflict regarding arbitrability. But the potential conflict is resolved quickly because the AOA clearly and unambiguously defers to the Services Agreement in the event of conflicting provisions. Reading all of the provisions together, the AOA carveout reads as follows: "The parties hereto agree that [the arbitration agreement] contained in [the Services Agreement] shall govern . . . notwithstanding the provisions of [the AOA] or [the Subscription Agreement], [including the AOA forum provision]."[32]

The Services Agreement's arbitration agreement is broad. It requires arbitration of "any dispute arising out of or related to this Agreement."[33] The phrase "related to" "extends the arbitration clause beyond the four corners of the agreement." *Li*, 2013 WL 1286202, at *6. Given the breadth of the arbitration provision, the court cannot conclude that the AOA or the Subscription Agreement "prevent the court from finding clear and unmistakable evidence of an intent to arbitrate arbitrability." *Fairstead*, 288 A.3d at 758.

This court's decision in *Orix LF, LP v. Inscap Asset Management, LLC*, 2010 WL 1463404 (Del. Ch. Apr. 13, 2010), supports the conclusion in this case. In *Orix*,

---

[32] *See* AOA § 9.3.

[33] Services Agreement § 6.11.

the litigants were parties to two contracts:  an ISM Agreement that did not have an arbitration agreement, and a Fund Agreement which did, and incorporated the AAA rules.  2010 WL 1463404, at *3.  Like Trellis, the plaintiff in *Orix* contended "the defendants dressed up disputes arising solely under the ISM Agreement as matters implicating the Fund Agreement in order to take advantage of the latter agreement's arbitration clause." *Id.* at *6.  The ISM Agreement contained a merger clause which made explicit reference to the Fund Agreement and included a provision for service of process in connection with an arbitration. *Id.* at *2–3.  The court concluded that the parties agreed to arbitrate all disputes arising out of or related to the Fund Agreement, including substantive arbitrability. *Id.* at *7.  Pointing to the language of the arbitration agreement, which extended to disputes "arising out of" and "relating to" the Fund Agreement, the court noted that the "close interdependence between the contracts suggests that any dispute under the ISM Agreement necessarily 'relates to' the Fund Agreement." *Id.*  The court was careful in explaining, however, that it was not reaching any questions of substantive arbitrability of the ISM Agreement, which was not invoked in the arbitration claims. *Id.* at *7–8.  Like in *Orix*, the court here finds the delegation of arbitrability in the Services Agreement sufficient to defer the question of substantive arbitrability for

claims under the Subscription Agreement to the arbitrator. This court thus lacks jurisdiction to consider questions of substantive arbitrability.

### 2. Do other agreements disrupt delegation of arbitration?

Facing the conclusion that the Services Agreement delegates questions of substantive arbitrability to the arbitrator, Plaintiff has challenged the existence of an agreement to arbitrate by way of either supersession by or conflict with the AOA.

### a. The Arbitration Claims do not explicitly invoke the AOA.

The court must determine whether an agreement to arbitrate exists when an arbitration claim implicates an agreement lacking an arbitration agreement, like the AOA. *See Fairstead*, 288 A.3d at 758; *Buzzfeed*, 2024 WL 2187054, at *14.

The Arbitration Claims do *not* make any claims under either the OA or the AOA. Here, like in *Buzzfeed*, Plaintiff's argument boils down to an argument that the Arbitration Claims are better brought under the AOA—*i.e.* that the Arbitration Claims are not arbitrable. The Arbitration Claims do not rely on the AOA or reference the AOA. Plaintiff points to the remedy requested—rescission of its membership interest in ClearList—to persuade this court that the Arbitration Claims are *really* claims under the AOA. This is simply an argument over the merits of the Arbitration Claims and the scope of available relief, not the threshold issue of substantive arbitrability. Under *Henry Schein* these are issues for the arbitrator, not

the court. *See* 586 U.S. at 68–69. This court is not empowered to determine substantive arbitrability of the claims because the claims are not brought under the AOA, nor is the AOA explicitly invoked in any way in the Arbitration Claims. *See Buzzfeed*, 2024 WL 2187054, at \*12 ("[D]espite BME's best efforts to package its argument as one for the Court, its argument that the Employees' claims do not fall under the [EA's] arbitration clauses is actually a substantive arbitrability question for the arbitrator." (citation modified)); *id.* at \*18 ("At bottom, BME has invited this Court to adjudicate substantive arbitrability by first impermissibly recasting the EA [d]efendants' arbitration claim as arising out of a different agreement, then arguing no agreement to arbitrate exists. But the arbitration petition does not invoke the charter or the OAs. And even if it turns out the EAs cannot support the claims as pled, courts may not ignore a delegation of arbitrability even if the arbitration claims as pled appear to be wholly groundless."); *Legend Nat. Gas II Hldgs., LP v. Hargis*, 2012 WL 4481303, at \*5 (Del Ch. Sep. 28, 2012) ("The major problem with the [plaintiffs'] argument is that they essentially want this court to assess definitively at the outset whether [defendant's] claims arise out of or relate to the Employment Agreement. Such an assessment would amount to deciding substantive arbitrability, thereby circumventing the very purpose of *Willie Gary*."); *see Henry Schein*, 586 U.S. at 68 ("When the parties' contract delegates the arbitrability question to an

arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").[34]

Therefore, Plaintiff cannot secure this court's review on grounds that simply attempt to resurrect the "wholly groundless" exception under a new name.[35]

### b. The AOA does not supersede the Services Agreement or the Subscription Agreement.

In its opening brief, Plaintiff made a cursory argument that the AOA superseded the arbitration agreement in the Services Agreement, because the AOA was executed after the Services Agreement and contained an integration clause.[36]

---

[34] Prior to *Henry Schein*, Delaware and some other courts applied a third prong to the substantive arbitrability question known as the "wholly groundless" exception. Under that exception, the court would not defer the question of substantive arbitrability to the arbitrator if it "is clear that the claim of arbitrability is wholly groundless." *McLaughlin v. McCann*, 942 A.2d 616, 626 n.41 (Del. Ch. 2008) (quoting *Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO v. Nolde Bros., Inc.*, 530 F.2d 548, 553 (4th Cir. 1975), *aff'd*, 430 U.S. 243 (1977)). *Henry Schein* "struck down the 'wholly groundless' exception to the arbitrability analysis." *Gulf LNG Energy, LLC v. Eni USA Gas Mktg. LLC*, 242 A.3d 575, 586 (Del. 2020).

[35] *But see Praeger v. Dr. Praeger's Sensible Foods LLC*, C.A. No. 2025-0332-JTL, at 20 (Del. Ch. July 14, 2024) (TRANSCRIPT) (suggesting that resolving the substantive arbitrability question when there is an arbitration agreement in one agreement and a forum provision in another should not be based upon whether an affirmative claim was asserted in the arbitration).

[36] Pl.'s Opening Br. 26.

Plaintiff's reply brief did not respond to ClearList's arguments on this issue, and Plaintiff did not raise it at oral argument. Therefore, the argument is waived. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived."); *MHS Cap. LLC v. Goggin*, 2018 WL 2149718, at *16 & n.190 (Del. Ch. May 10, 2018) (treating claims not briefed as abandoned).

But even if the argument were not waived, the AOA's forum provision did not supersede the arbitration agreement in the Services Agreement. The question of whether an agreement to arbitrate has been superseded by a later agreement is one for the court to decide. *Buzzfeed*, 2024 WL 2187054, at *13. If the court finds that supersession is incomplete and that the agreement to arbitrate "still exists," then the court must "enforce [the] arbitration provision as to what that contract covers." *Field Intel. Inc. v. Xylem Dewatering Sols. Inc.*, 46 F.4th 351, 360 (3rd Cir. 2022). Plaintiff concedes that claims asserted under the Services Agreement are subject to arbitration,[37] which belies the supersession argument. Plaintiff does not dispute that the Services Agreement exists and is a valid agreement, nor that Plaintiff is currently bound by the Services Agreement. Instead, Plaintiff argues that claims seeking the rescission of equity are not within scope of the Services Agreement and are the sole

---

[37] Pl.'s Reply Br. 27. Notably, the integration clause in the AOA, along with the carveout, is identical to that in the OA.

domain of the AOA. This is a substantive arbitrability question that has been delegated to the arbitrator.

### B.     Plaintiff's Motion for a Preliminary Injunction is Denied as Moot

"A preliminary injunction may be granted where the movant demonstrates: (1) a reasonable probability of success on the merits at a final hearing; (2) an imminent threat of irreparable injury; and (3) a balance of the equities that tips in favor of issuance of the requested relief." *Applied Energetics, Inc. v. Farley*, 2019 WL 334426, at \*5 (Del. Ch. Jan. 23, 2019). If a court finds a lack of subject matter jurisdiction over issues of substantive arbitrability, an opposing party's motion for a preliminary injunction must be denied. *See, e.g.*, *CVD Equip. Corp. v. Dev. Specialists, Inc.*, 2015 WL 4506052, at \*4 (Del. Ch. Jul. 23, 2015).

The court does not have subject matter jurisdiction over the question of substantive arbitrability because the parties have agreed to delegate that decision to the arbitrator. As this court lacks subject matter jurisdiction to determine substantive arbitrability, Plaintiff's motion for a preliminary injunction is denied.

### C.     Plaintiff's Claims Brought Before This Court are Stayed

The question of whether ClearList may arbitrate the claims in the Arbitration Action and obtain the relief requested is before the arbitrator. Therefore, the proper procedure is to stay the remainder of Plaintiff's claims pending arbitration. *See*

*Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("staying rather than dismissing a suit comports with the supervisory role that the FAA envisions for the courts"); *see also In re Porco v. Pacific Basin Res. Mgmt. LLC*, 2024 WL 5167180, at *5 (Del. Ch. Dec. 18, 2024) (ORDER); *see, e.g.*, *Erving*, 2022 WL 17246320, at *7 (staying action pending the arbitrator's ruling on substantive arbitrability); *Legend*, 2012 WL 4481303, at *9 (same). It is of course possible that the arbitrator will find some of ClearList's claims non-arbitrable, in which case, Plaintiff may seek to lift the stay to the extent that Plaintiff's claims do not relate to claims and issues before the arbitrator.

## III. Conclusion

Defendant's motion to compel arbitration is granted and Plaintiff's motion for a preliminary injunction is denied. Defendant's motion to stay is granted. Plaintiff's claims are stayed pending a determination by the arbitrator of arbitrability of the Arbitration Claims.

Very truly yours,

*/s/ Paul A. Fioravanti, Jr.*

Vice Chancellor